STATE EX REL. GENTRY *v.* O'BYRNE, JUDGE.

[No. 27,833.   Filed February 23, 1943.   Rehearing denied
March 29, 1943.]

284

*D. A. Myers* and *John E. Osborn,* both of Greensburg, and *V. J. McCarty,* of Brookville, for relator.

*E. Ralph Himelick,* of Connersville, *Orville W. Hubbard,* of Brookville, *Grier M. Shotwell,* of Indianapolis, and *Ewing E. Wright,* of Osgood, for respondents.

SHAKE, J.—This is an original action for a writ of mandate against a circuit court and the judge thereof. The petition recites that Leatha Horn died a resident of Franklin County on March 16, 1939, survived by her father, a brother, and three sisters, none of whom were or are residents of said county. A purported will was offered but the probate thereof was resisted and denied. Prior to or during that litigation the court appointed Orville W. Hubbard as special administrator of the estate of said decedent. The date of his appointment and the reasons that prompted it are not disclosed, but authority therefor is found in § 6-308, Burns' 1933, § 3044, Baldwin's 1934, which authorizes the naming of a special administrator to conserve the assets during a will contest, and we must indulge the presumption that such appointment was justified. On May 7, 1942, the relator filed in the respondent court his verified application to be appointed general administrator of said estate. He recited in his application that the time allowed for filing a bill of exceptions in the action to resist the probate of said

offered will, and all possibility of appeal from the judgment denying such probate, would expire the next day, May 8, 1942; that said decedent left an estate of a value in excess of $15,000, and that he was the largest creditor with claims aggregating more than $10,000; and that he possessed all the necessary qualifications to be the general administrator of said estate.

Two days after the filing of the relator's application, said Orville W. Hubbard made an application for letters, supported by the request of all the decedent's surviving heirs that he be so appointed. There were intermediate motions which we need not notice, and subsequently the relator filed a motion and affidavit for the appointment of a special judge to pass upon his application, in which he objected to the presiding judge selecting the special judge, or submitting names from whom a special judge might be selected. On motion of Hubbard, the relator's affidavit for the appointment of a special judge was stricken from the files, after which the presiding judge entered the following order:

> "And thereupon the Court of the Court's own motion, and without regard to or action upon any pending application herein, formally names and appoints Orville W. Hubbard as General Administrator of the estate of said decedent, . . ."

Hubbard thereupon tendered his bond which was approved, and letters of general administration were ordered issued to him.

We ordered an alternative writ commanding the Franklin Circuit Court and its judge to strike from the record of said court the aforesaid order purporting to appoint the said Orville W. Hubbard as general administrator of the estate of said decedent, and to grant the relator's motion and affidavit for a change of venue from the judge; or in the alternative, that

they show cause, on or before a day named, why the same should not be done. Within the time allowed, the said respondents filed in this court what they denominate a demurrer to the complaint and alternative writ of mandate.

In *State ex rel. Kensinger* v. *Cox, Judge* (1923), 193 Ind. 519, 141 N. E. 225, which was an original action for a writ of mandate, it was observed that no means have been provided in this court for making up issues and holding formal trials in such proceedings. It may be added that, by reason of their nature, original actions for mandate and prohibition almost invariably present only questions of law, and that in very rare instances has this court been called upon to determine issues of fact. As a consequence, we have not felt any necessity for promulgating formal rules regulating the practice in such proceedings. *State ex rel. Fry* v. *Superior Court of Lake Co.* (1933), 205 Ind. 355, 186 N. E. 310, was an original action for a writ of prohibition in which a temporary writ issued. In response to an order to show cause why the writ should not be made permanent, the respondents demurred to the petition. After quoting from *State ex rel. Kensinger* v. *Cox, Judge, supra,* this court said at p. 359:

> "The respondents should have made a return showing any reason in fact or in law why the writ should not be obeyed. In this case the writ is based upon the verified complaint of the plaintiff below and the temporary restraining order issued thereon. It is clear that no controversy could arise concerning the facts. The only question involved is the legal one as to whether the court below had jurisdiction. The so-called demurrer and memoranda, and briefs in support thereof, deal with that question and we will treat them as a return."

From these authorities it may be deduced that the only pleading contemplated on behalf of a respondent

in an original action for a writ of mandate or prohibition in this court is a return; and, as has been said, a respondent may in such return advance any reason in law or in fact why the writ should not be obeyed. In the instant case the so-called demurrer will therefore be considered as sufficient to present questions of law for our determination.

The first question is whether the relator was entitled to a judicial determination of his alleged right to administer upon the estate of the decedent. In the absence of a restrictive statute, a probate court has a wide latitude in the choice of the personal representative of an estate, and its determination will not be disturbed except for an abuse of discretion. 21 Am. Jur., Executors and Administrators, § 58. The same is true when the selection is made from a group of two or more persons equally entitled to be appointed. 1 Henry's Probate Law (3d Ed.), § 31. And when preferences are created by statute, the court may, nevertheless, refuse to appoint one who is unqualified or unfit. *Studabaker* v. *Faylor* (1917), 66 Ind. App. 175, 114 N. E. 772. Where, however, the statute commands, and does not merely direct, that letters shall be granted to certain designated persons, the court may not ignore the mandate of the law, without some proper reason. *Cooper* v. *Cooper* (1909), 43 Ind. App. 620, 88 N. E. 341.

Our statute provides that letters of administration shall be granted in the following order:

"First. To the widow or widower.

"Second. To the next of kin.

"Third. To the largest creditor applying and residing in the state.

"Fourth. If no person thus entitled to administer shall apply within twenty [20] days after the death of the intestate, the clerk or court shall

appoint a competent inhabitant of the county, to whom letters shall issue." § 6-301, Burns' 1933, § 3030, Baldwin's 1934.

At first glance it might appear that inasmuch as three years had elapsed after the death of Mrs. Horn, and before any application was made for general letters of administration, the court was justified in proceeding under the fourth clause of the above statute to appoint any competent inhabitant of the county. We may not overlook the fact, however, that in the meanwhile it had been undetermined whether the appointment of an administrator was either necessary or proper. Had the purported will been admitted to probate the named executor, if competent, would have been entitled to qualify, and if no executor had been named, or the one designated was unqualified or refused to serve, it would have been the duty of the court to appoint an administrator with the will annexed, for which there is specific statutory authority. § 6-205, Burns' 1933, § 3029, Baldwin's 1934. We see no reason why one entitled to be appointed administrator should be held to be foreclosed by his failure to act during a period when the court was powerless to act. The relator made his application at the earliest opportunity after it became known that the estate was subject to statutory administration.

On close analysis, the case of *Hayes* v. *Hayes* (1881), 75 Ind. 395, appears to be decisive on the point under consideration. There, as here, there were objections to a purported will and special administrators were appointed *pendente lite*. After judgment denying probate and after an appeal to this court had been perfected and a supersedeas issued, the court below appointed a stranger as general administrator to the

exclusion of the decedent's son who was an applicant. On appeal from the judgment granting letters of administration under such circumstances, Elliott, J., speaking for this court, said at pp. 397 and 398:

"It appears from the evidence, and without contradiction, that Ezra G. Hayes, a son of the decedent, possessing all the requisite qualifications and properly eligible in every respect, asked to be appointed administrator, and that his petition was denied and the trust .conferred upon a stranger. So far as we can ascertain, there was nothing in the evidence tending to show that the son was ineligible, and the appellees have not called our attention to any fact tending to impeach his right to administer upon his father's estate.

"Section 7 of the act concerning the settlement of decedents' estates commands, not directs merely, that letters shall be granted to the next of kin, and we can find nothing in the record justifying the action of the court in disregarding this command by denying the kinsman's petition and conferring the trust upon a stranger."

The statute referred to as Section 7 in the last paragraph of the quotation is found in Vol. 2, R. S. 1876, p. 492, and reads as follows:

"After the expiration of fifteen days from the death of an intestate, the proper clerk or court having examined the person applying for letters, and such persons as may be deemed proper to be examined, under oath, touching the time and place of the death of the intestate, whether he left a will, and concerning the qualifications of such person, and there being no such will, shall grant letters of administration in their order: First, to the widow; second, to the next of kin; third, to the largest creditor residing in the state; and fourth, if no person thus entitled to administer shall apply within thirty days after the death of the intestate, the clerk or court shall appoint a competent inhabitant of the county, to whom the letters shall issue."

Reference to the record in the Hayes case discloses that the decedent died on February 3, 1875, but that his son did not apply for letters until August 17, 1877, on account of the unsuccessful effort to establish the purported will. The Hayes case was overruled by *Dinwiddie* v. *Shipman* (1915), 183 Ind. 82, 108 N. E. 228, insofar as it may be construed to hold that a general administrator may be appointed where a will admitted to probate has been set aside, pending an appeal in which there is a stay of proceedings; otherwise, it appears to be the law of this State and we consider it our duty to follow it.

Hubbard, whom the court appointed administrator, made no showing that he was an heir or creditor. If he was entitled to compensation for his services ▮▮▮▮ as special administrator that would not qualify him under the third clause of § 6-301, Burns' 1933, § 3030, Baldwin's 1934. Such a charge would be merely an expense of administration. A creditor, within the meaning of the statute, is one to whom the decedent was indebted. *Hildebrand* v. *Kinney* (1909), 172 Ind. 447, 87 N. E. 832, 19 Ann. Cases 788. Nor can any advantage accrue to Hubbard by reason of the petition which the surviving heirs addressed to the court requesting that he be appointed. This petition may properly be construed as a renunciation of any claims of right on their part to administer upon the estate of their sister, but it was not within their power to bind the court with respect to another applicant who was within neither of the preferred groups. The only binding effect of their renunciation was to devolve the right of administration on some qualified member of the class next entitled, to which the relator belongs. 33 C. J. S., Executors and Administrators, § 47c.

Finally, the respondent says that if the relator is

entitled to a change of venue from the judge, he has no right to have the persons from whom the special judge may be selected certified by the clerk of this court under Acts 1937, ch. 85, § 1, § 2-1430, Burns' 1933 (Supp.), § 2223-1, Baldwin's 1937 Supp. Reliance is placed upon the fact that by its title and context chapter 85 is only applicable to criminal and civil cases, and that this is a probate proceeding of a special or statutory nature. A change of venue from the county or judge is authorized in a matter of this character by § 2-1403, Burns' 1933 (Supp.), § 3024, Baldwin's 1935 Supp., which provides:

> "In any action, proceeding, or matter, of any character or nature whatever, relating to, connected with or involving the estate of a decedent in any manner whatever, any of the parties thereto shall be entitled to a change of judge or change of venue from the county. . . ."

The statute from which the above quotation is taken further provides, in the same section, that a change of venue from the county or judge may be had "upon the same terms and conditions, upon which there may be a change of judge or a change of venue from the county in any civil action." We must, therefore, look to the statutes regulating changes of venue in civil actions to ascertain the terms and conditions upon which a change of venue may be had in a probate matter. This leads us to chapter 85 of the Acts of 1937, which authorizes a party asking for a change of venue from the judge to object to the presiding judge naming the persons from whom the special judge shall be selected.

In any event, § 1 of ch. 103, Acts 1937, § 2-1424, Burns' 1933 (Supp.), § 207-1, Baldwin's 1937 Supp., provides that in any matter of a civil, statutory or

equitable nature not triable by jury, in which there is a motion for a change of venue from the judge and such judge is mandated by this court to grant the change, he shall not have power and authority to make an appointment of a special judge to hear such cause, but that if the parties do not agree upon a special judge the clerk of the court below shall certify that fact to the clerk of this court who will nominate competent and disinterested persons from whom a special judge may be selected. This act is directly applicable to the situation now before us.

The alternative writ of mandate heretofore issued is made permanent.

NOTE.—Reported in 46 N. E. (2d) 687.