**Gordon D. BROWN and Leta Mayvis Brown, Plaintiffs-Appellants,**

v.

**Barrett Y. BROWN, as Personal Representative of the Estate of Mable Inez Brown, Deceased, Defendants-Appellees.**

No. 79CA0574.

Colorado Court of Appeals,
Div. II.

Jan. 4, 1980.

Rehearing Denied Jan. 31, 1980.

Certiorari Denied March 31, 1980.

Houtchens, Houtchens & Daniel, Jerry C. Daniel, Greeley, for plaintiffs-appellants.

William Pehr, Westminster, for defendants-appellees.

BERMAN, Judge.

Plaintiffs appeal the trial court's granting of defendant's motion for summary judgment. We reverse.

In 1959, plaintiffs entered into an option agreement with the deceased, Mabel Inez Brown, for the purchase of certain property owned by the deceased at a price of $6,000. The agreement was recorded and provided that "upon [the deceased's] election to sell the above described property, or upon her death," the plaintiffs could exercise their option to buy the land. In the event of the deceased's death, the plaintiffs, in order to exercise the option, were required to give written notice within sixty days after the decedent's death plus $1,000 cash to the decedent's "legal representative."

The deceased died intestate on October 15, 1976. On November 12, 1976, the plaintiffs personally delivered written notice, addressed "To the Personal Representative of the Estate of Mabel Inez Brown, Deceased" and a cashier's check for $1,000 to the defendant, Barrett Y. Brown, the deceased's son, who at the time of decedent's death was living at the same address as the decedent. In the notice, the plaintiffs requested that the defendant advise them "when you are ready to deliver the deed and [the plaintiffs would then] arrange a mutually convenient date for closing and final payment." The defendant accepted the check and writ-

ten notice. However, at that time, the defendant had not yet been appointed personal representative of the estate.

After the notice was given, the parties had several conversations culminating in a meeting between the parties and the plaintiffs' attorney on May 19, 1977, to discuss the legal steps necessary to convey the property. At that meeting, the defendant asked plaintiffs' attorney to assist him in handling his mother's estate. Plaintiffs' attorney opened the decedent's estate, and, on October 31, 1977, the defendant was appointed personal representative.

Plaintiffs' attorney arranged a second meeting between the parties, on November 17, 1977, to close the transaction. The plaintiffs tendered to the defendant for the balance of the purchase price a personal check made payable to the "Estate of Mabel Inez Brown." However, without specifying his objections, the defendant refused to accept this check and consummate the transaction.

After the abortive closing, plaintiffs' attorney attempted to contact the defendant regarding the option on two occasions, but was unable to do so. Following several months of silence, plaintiffs brought an action for specific performance of the option, and both defendant and plaintiffs moved for summary judgment.

Although the defendant raised a number of affirmative defenses, the trial court granted defendant's summary judgment on only two of the grounds raised, namely: that the term "legal representative" was equivalent to personal representative, and that the plaintiffs knew that no personal representative had been appointed. Further, the court held that the plaintiffs were under a duty to have a personal representative appointed within the sixty days during which the option had to be exercised, and failure to do so was at their own risk. The court ruled that because the defendant was not the personal representative when notice to exercise the option was served on him, the notice was defective and the plaintiffs,

thus, failed to comply with the provisions of the option.

Relying upon the "relation back" doctrine codified in § 15–12–701, C.R.S.1973, plaintiffs contend that the defendant's later appointment as personal representative served to validate the actions taken by him prior to his appointment.

That statute provides, in pertinent part:

"The powers of a personal representative relate back in time to give acts by the person appointed which are *beneficial* to the estate occurring prior to appointment the same effect as those occurring thereafter." (emphasis supplied)

Under this statute, the central question here is whether the defendant's act of accepting the plaintiffs' notice and first check was "beneficial" to the estate. Defendant argues that his acceptance of the plaintiffs' notice that they intended to exercise their option to purchase property for $6,000 which was valued at $45,000 at the time of tender, and presently worth $70,000 manifestly was not a benefit to the estate.

In support of this contention defendant cites *Wrinkle v. Trabert*, 174 Ohio St. 233, 188 N.E.2d 587 (1963). *Wrinkle*, however, involved a suit for wrongful death against the estate, and the court held that the relation back doctrine could not be applied because there was no benefit to the estate. In *Wrinkle*, the act of the personal representative was actually detrimental to the estate and would have resulted in the depletion of the estate's assets had the plaintiff prevailed in his action. Here, there was no depletion of the estate's assets.

Although the property could have been sold for a greater price, the $6,000 specified by the option contract inured to the benefit of the estate, increasing its assets, and, contrary to defendant's implicit argument, did not deplete the estate. *See Griffin v. Workman*, 73 So.2d 844 (Fla.1954); *Graves v. Welborn*, 260 N.C. 688, 133 S.E.2d 761 (1963). The fact that a better price could have been obtained does not, under the

statute, negate the actual benefit to the estate resulting from the defendant's act.

■ Nor do we accept defendant's contention that because the market value of the land in question had increased, the exercise price of $6,000 was not a benefit to the estate. The record reveals that the plaintiffs bought an adjoining tract of land from the deceased at about the same time the option in question was signed. Plaintiffs' uncontroverted deposition indicates that the deceased demanded a higher price for the first parcel of land, which the plaintiffs agreed to pay if the deceased would grant them an option on the land now in controversy. We will not disturb a contract that was fair and reasonable at the time it was signed simply because at a later date it becomes disadvantageous to one of the parties as a result of the vagaries of the economy. *See Sedalia Land Co. v. Robinson Brick & Tile Co.*, 28 Colo.App. 550, 475 P.2d 351 (1970).

The defendant further argues that the plaintiffs, as holders of an option, were creditors against the estate, and therefore had the power and duty, under § 15–12–203 C.R.S.1973, to have a personal representative appointed. That statute provides, in pertinent part:

"(1) Whether the proceedings are formal or informal, persons who are not disqualified have priority for appointment in the following order:

.         .         .         .         .

."(f) Forty-five days after the death of the decedent, any creditor.   .   .   .   "

The defendant cites *Wrinkle, supra,* for the proposition that one who has a *claim* against an estate to which no administrator or personal representative has been appointed, has, as a creditor, the power to preserve such claim by requesting the appointment of a personal representative to whom he can present such a claim. *Wrinkle, supra,* was interpreting an Ohio statute similar to § 15–12–203.

■ The fatal flaw in defendant's reasoning is that plaintiffs' option to purchase was not a claim against the estate. Section 15–10–201(6) defines "claims," with respect to the Colorado Probate Code, as follows:

" 'Claims', in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person[s] whether arising in contract, in tort, or otherwise, and liabilities of the estate which arise at or after death of the decedent or after the appointment of a conservator, including funeral expenses and expenses of administration. *The term does not include . . . demands or disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate.*" (emphasis supplied)

Because the option in the present case was recorded, it affected the title of the property in question. *See* § 38–35–109, C.R.S. 1973; § 38–35–111, C.R.S.1973. A demand or dispute arising from an instrument affecting title is explicitly excluded by the terms of § 15–10–201(6) from being a claim against the estate as it constitutes a demand or dispute regarding title to a specific asset of the estate. *See Johnson v. Johnson*, 87 Colo. 207, 286 P. 109 (1930). Therefore, the plaintiffs were not creditors of the estate within the meaning of § 15–12–203. *See Allen v. Steiger*, 17 Colo. 552, 31 P. 226 (1892); *State ex rel. Gentry v. O'Byrne*, 221 Ind. 282, 46 N.E.2d 687 (1943). Without the status of creditors, the plaintiffs could not instigate the appointment of a personal representative. Therefore, without the application of § 15–12–701, plaintiffs would have been unable to give the required notice within the sixty day period to the personal representative in order to exercise their option.

The trial court, in granting defendant's motion for summary judgment, did not consider the other grounds raised by the defendant. Therefore, the cause is remanded for the trial court's consideration of these issues. *Stone v. Chapels for Meditation Inc.*, 33 Colo.App. 346, 519 P.2d 1233 (1974).

We reverse and remand to the trial court for further proceedings consistent with this decision.

PIERCE and RULAND, JJ., concur.