[Cite as *Edwards v. Ohio Dept. of Transp.*, 2016-Ohio-5221.]

| | |
|---|---|
| JESSICA EDWARDS, et al. | Case No. 2014-00553 |
| Plaintiffs | Judge Patrick M. McGrath |
| v. | <u>DECISION</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

{¶1} Before the court are (1) objections filed by defendant Ohio Department of Transportation (ODOT) on March 25, 2016 to a magistrate's February 3, 2016 decision wherein the magistrate recommended judgment in favor of plaintiffs on the issue of liability; (2) a response filed by plaintiffs on April 4, 2016 to ODOT's objections and plaintiffs' objections to the magistrate's decision; (3) ODOT's response to plaintiffs' April 4, 2016 filing, which ODOT filed on April 11, 2016; and (4) plaintiffs' reply to ODOT's response filed on April 18, 2016.

{¶2} Upon independent review as to the objected matters, the court denies ODOT's objections and plaintiffs' objections. The court finds that the magistrate has properly determined the factual issues and appropriately applied the law. The court adopts the magistrate's decision as its own and returns the matter to the magistrate for trial on the issue of damages.

## I. Background

{¶3} On June 9, 2014, plaintiffs Jessica Edwards, Cameron Edwards, and Emily Edwards sued ODOT, asserting claims of negligence, trespass, nuisance/nuisance per se, negligent infliction of emotional distress, and intentional infliction of emotional distress. Plaintiffs' claims stem from the contamination of their well-water system. According to plaintiffs, the contamination occurred after ODOT applied road salt to a

portion of State Route 86 (SR 86) that is adjacent to their property in Lake County, Ohio, and it failed to maintain a drainage ditch that is adjacent to SR 86 and situated along their property line, with the result that salt leached into the soil and contaminated an aquifer. Plaintiffs seek compensatory damages in excess of $500,000.00. ODOT has answered plaintiffs' complaint, generally denying plaintiffs' allegations and raising affirmative defenses, e.g., plaintiffs' claims were barred by statutes of limitations, discretionary immunity, and the public-duty doctrine.

{¶4} In accordance with Civ.R. 53, this court referred the matter to a magistrate who heard the case on the issue of liability. On February 3, 2016, the magistrate issued a decision wherein he recommended judgment in favor of plaintiffs on the issue of liability and determined that:

(1) the discovery rule applied under the facts of this case;
(2) salt contamination was a continuing trespass or nuisance;
(3) the statute of limitations did not bar plaintiffs' claims;
(4) ODOT was not entitled to discretionary immunity for actions or inactions related to plaintiffs' claims;
(5) neither ODOT's application of deicing chemicals to SR 86 nor maintenance of the SR 86 road drainage ditch adjacent to plaintiffs' property constituted a public duty pursuant to R.C. 2743.01(E)(1)(a);
(6) ODOT had a continuing involvement in applying salt either on or adjacent to plaintiffs' property;
(7) plaintiffs' expert's testimony regarding the cause of the groundwater contamination on plaintiffs' property was more credible than ODOT's expert's testimony;
(8) based upon the totality of the evidence, ODOT negligently failed to maintain the drainage ditch and its negligence allowed salt to seep into the ground and contaminate the shallow aquifer that supplied plaintiffs' well;
(9) the presence of high levels of salt in plaintiffs' groundwater was caused by the application of road salt on SR 86 and plaintiffs' land that borders the roadway, which resulted in substantial damage that interfered with plaintiffs' reasonable and foreseeable use of water;
(10) plaintiffs proved their trespass claim by a preponderance of the evidence;
(11) plaintiffs could not prevail on their claim for negligent infliction of emotional distress; and

(12) the totality of the evidence did not demonstrate any conduct on the part of ODOT's employees that would be so extreme and outrageous to sustain a claim of intentional infliction of emotional distress.

{¶5} Neither party timely filed objections to the magistrate's decision. On February 17, 2016, ODOT moved for an extension of time to file objections. The court granted ODOT's motion. On March 15, 2016, ODOT filed its objections to the magistrate's decision in a document that failed to conform with page limitations contained in L.C.C.R. 4(E), and with its objections, ODOT contemporaneously moved for leave to exceed the page limit set forth in L.C.C.R. 4(E). The court denied ODOT's motion for leave to exceed page limits, struck its objections, and ordered ODOT to re-file its objections. On March 25, 2016, ODOT re-filed its objections, presenting fifteen objections for review.

{¶6} Thereafter, on April 4, 2016, plaintiffs filed a response to ODOT's objections and raised their own objections, stating in their filing: "To the extent that this response objects to a determination of the Magistrate, this filing should also be considered an objection to the issue referenced." (Response at 1.) Plaintiffs do not separately delineate their objections—instead their objections are incorporated in their response. Notably, in their filing, plaintiffs represent that the response is to ODOT's objections "filed on March 15, 2016"—objections that this court previously struck. However, a review of plaintiffs' filing discloses that plaintiffs' response essentially corresponds to ODOT's re-filed objections. Thus, despite the reference in plaintiffs' filing that the response is to ODOT's March 15, 2016 objections, the filing will be considered as both a response to ODOT's re-filed objections and a document containing plaintiffs' objections. Because plaintiffs filed their own objections within ten days after ODOT re-filed objections in accordance with Civ.R. 53(D)(3)(b)(i), the court finds plaintiffs' objections are timely filed.

## II. Discussion

{¶7} Civ.R. 53(D)(3)(b) pertains to objections to a magistrate's decision. Pursuant to Civ.R. 53(D)(3)(b)(i), "A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." According to Civ.R. 53(D)(3)(b)(iii), "An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."

{¶8} Civ.R. 53(D)(4) governs a court's action on objections to a magistrate's decision. Civ.R. 53(D)(4)(d) provides, "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. * * *." A magistrate's decision "is not effective unless adopted by the court." Civ.R. 53(D)(4)(a).

{¶9} For ease of discussion, the court considers some objections together and in a different order from the order as set forth by the parties.

**Objection No. 1: "The magistrate erred by not concluding that plaintiffs' claims are barred by the statute of limitations: The discovery rule does not apply as a matter of law to extend the statute of limitations."**

{¶10} In its first objection, ODOT essentially contends that the magistrate erroneously applied the discovery rule to extend the statute of limitations because,

according to ODOT, plaintiffs had constructive notice that road salt was a possible contaminant in their water supply more than two years before they filed their lawsuit. In response, plaintiffs essentially assert that the discovery rule is an exception to the general rule that a cause of action accrues and a statute of limitations begins to run at the time that a wrongful act was committed. Plaintiffs assert that ODOT has selectively cited to the record and ignored the fact that it was involved in the investigation of plaintiffs' well and later denied contaminating it.

{¶11} R.C. 2305.09 imposes a four-year limitation period for certain actions—including negligence, trespass, and nuisance. It provides:

> i. Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:

(A) For trespassing upon real property;

(B) For the recovery of personal property, or for taking or detaining it;

(C) For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued;

(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code;

(E) For relief on the grounds of a physical or regulatory taking of real property.

If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.

In *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 180, 546 N.E.2d 206 (1989), the Supreme Court of Ohio stated, "This court has determined that, in some circumstances, a discovery rule is appropriate for calculating when a cause of action accrues for purposes of defining a limitations period. Within the parameters of expressly defined circumstances, the discovery rule is applicable to claims brought under R.C. 2305.09, 2305.10 and 2305.11(A). Depending on the claim and the applicable statute, the date of discovery may toll the running of the governing statute of limitations until the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained-of injury." In view of *Investors REIT One*, ODOT's claim that the discovery rule does not apply as a matter of law to extend the statute of limitations is not well-taken.

{¶12} ODOT's first objection is overruled.

**Objection No. 2: "The magistrate erred by concluding that the discovery rule tolled the statute of limitations; ODOT was not involved in a continuing trespass or nuisance."**

**Objection No. 9: "The magistrate erred by concluding that ODOT was involved in trespassing onto plaintiffs' property and creating a nuisance."**

{¶13} Both ODOT's second and ninth objections concern the magistrate's determination that ODOT was involved in a continuing trespass or nuisance. In its second objection, ODOT takes issue with this portion of the magistrate's decision:

> a. The evidence shows that ODOT has had continuing involvement in applying salt either on or adjacent to plaintiffs' property. The testimony established that road salt remained visible in or near the drainage ditch during summer months, including the months after plaintiffs' filed this action. Even if the court found that ODOT had no control of the salt after it was placed on plaintiffs' property and had seeped into the soil, such that the trespass became permanent, subsequent applications would result in fresh violations of plaintiffs' property rights, resulting in a continuing trespass. * * * Similarly, as

to plaintiffs' nuisance claim, ODOT's ongoing application of salt would give rise to a continuing nuisance claim.

{¶14} ODOT contends (1) that "the fact that road salt remained visible in or near the drainage during the summer months is not material to a finding that ODOT was negligent," (2) that "by saying that '[e]ven if the court found that ODOT had no control of the salt after it was placed on plaintiffs' property,' the magistrate seemed to recognize that ODOT cannot control where salt ultimately settles after it is applied to the road," (3) that "the magistrate erred by finding that 'subsequent applications [of road salt] would result in fresh violations of plaintiffs' property rights, resulting in a continuing trespass [and nuisance],'" and (4) that "the magistrate correctly acknowledged that ODOT's actions in this case were something that it was 'legally entitled to perform.' (Magistrate's Decision, p. 22.)." (Defendant's Objections to Decision of Magistrate at 3-4.)

{¶15} Whether road salt remained visible near the drainage ditch in the summer is relevant because it supports plaintiffs' theory that road salt contaminated the aquifer supplying the plaintiffs' well-water system. Moreover, insofar as ODOT acknowledges that it applied road salt to the portion of SR 86 next to plaintiffs' property, the court finds that the magistrate did not err by determining that subsequent applications of road salt would result in "fresh violations" of plaintiffs' property rights. As this court stated in *Paradise Tree Farm, Inc. v. Ohio Dept. of Transp.*, Ct. of Claims No. 2005-11167, 2008-Ohio-4213, "once the decision was made to apply salt brine to the roadways, [ODOT] can be held liable for negligently implementing such a decision." *Paradise Tree Farm* at ¶ 6, citing *Reynolds v. State*, 14 Ohio St.3d 68, 70, 471 N.E.2d 776 (1984). *See Reynolds* at paragraph one of the syllabus ("once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities").

{¶16} By its second and ninth objections ODOT challenges the magistrate's finding that it was involved in a continuing trespass or nuisance. A trespass "is an interference or invasion of a possessory interest in property." *Abraham v. Bp Exploration & Oil*, 149 Ohio App.3d 471, 2002-Ohio-4392, 778 N.E.2d 48, ¶ 14 (10th Dist.), citing *Crown Property Development, Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 681 N.E.2d 1343 (12th Dist.1996). Nuisance "'is a term used to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally.' *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 431-432, 28 O.O. 369, 55 N.E.2d 724." *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 17. "A qualified nuisance is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury." *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 59.

{¶17} In *Sexton v. City of Mason*, 117 Ohio St.3d 275, 2008-Ohio-858, 883 N.E.2d 1013, ¶ 45, the Ohio Supreme Court stated: "The defendant's ongoing conduct or retention of control is the key to distinguishing a continuing trespass from a permanent trespass. We hold that a continuing trespass in this context occurs when there is some continuing or ongoing allegedly tortious activity attributable to the defendant." And in *Adams v. Pitorak & Coenen Invs., Ltd.*, 11th Dist. Geauga No. 2011-G-3019, 2012-Ohio-3015, ¶ 71, an Ohio appellate court noted: "Much like a continuous trespass, a continuing nuisance arises when the wrongdoer's tortious conduct is ongoing, perpetually generating new violations."

{¶18} Here, ODOT applied road salt to the portion of SR 86 that was adjacent to plaintiffs' property, controlled the application of road salt to this portion of SR 86, and it controlled the maintenance of the ditch along SR 86 that was adjacent to plaintiffs' property. According to plaintiffs' expert, road salt ponded in water in the ditch, and, as a

result, the pond of water contained more salt and allowed it to leach into the ground and into plaintiffs' well. Whether ODOT was legally entitled to put road salt on the SR 86 is not at issue in this case. The court determines that the magistrate did not err in concluding that ODOT was involved in a continuing trespass and creating a nuisance.

{¶19} ODOT's second and ninth objections are overruled.

{¶20} The court also overrules plaintiffs' objection that states: "To the extent the Magistrate does not include the failure of ODOT to maintain the ditches it controlled as on-going conduct, the Plaintiff's [sic] object. The Magistrate made the right decision but may have neglected to include the correct on-going negligence." (Plaintiffs' Response and Objections filed on April 4, 2016 at 4-5.) Insofar as plaintiffs concede that the magistrate "made the right decision," the court finds that there is no error to correct.

**Objection No. 3: "The magistrate erred by concluding that ODOT was involved in a negligent or tortious activity; plaintiffs failed to prove ODOT was negligent or committed a tortious act."**

**Objection No. 7: "The magistrate erred by concluding that ODOT's action caused harm to plaintiffs; Plaintiffs produced no evidence that if the ditches had been maintained in a certain manner, they would not have been harmed."**

{¶21} In its third objection, ODOT states, "The magistrate's finding that ODOT committed a tort rests with the belief that it was 'a foreseeable risk that failure to maintain proper water flow in the ditches would result in contamination of the nearby shallow aquifers.' (Emphasis added.) (Magistrate's Decision, p. 16.)" ODOT contends that there was no evidence presented at trial that defined what would have constituted a "proper" water flow. ODOT further contends that there is no reliable probative evidence that ODOT failed to maintain the ditch in front of plaintiffs' property in a reasonable manner.

{¶22} In its seventh objection, ODOT maintains that the magistrate erred in concluding that ODOT's action caused harm to plaintiffs as plaintiffs failed to produce

evidence that if the ditches had been maintained in a certain manner, they would not have been harmed.

### *Discussion*

{¶23} At trial, Jessica Edwards testified that ponding water in the ditch was a recurrent problem and she began to notice ponding in the spring after plaintiffs moved into their property. Jessica Edwards testified that she saw water that overflowed from the ditch along SR 86 on to plaintiffs' property. According to Edwards, she called three times to have ODOT remedy the problem. (Tr., 70-72.) At trial, plaintiffs' expert indicated that in his opinion groundwater at plaintiffs' property had been contaminated by road salt to a greater extent because the road salt ponded in water from a ditch that was not clean, and, as a result, the pond of water contained more salt and allowed it to leach into the ground and into plaintiffs' well. (Tr., 362-363.)

{¶24} "It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). It is also established that liability for negligence "is predicated upon injury caused by the failure to discharge a duty owed to the injured party." *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 127, 247 N.E.2d 732 (1969).

{¶25} ODOT does not appear to dispute that it had a duty to maintain the drainage ditch alongside SR 86 that was adjacent to plaintiffs' property. Indeed, an opinion of the Ohio Attorney General supports the notion that the state had a duty to maintain this drainage ditch. In 1981 Atty.Gen.Ops. No. 1981-039, at 2-156, later clarified by 1982 Atty.Gen.Ops. No. 1982-025, the Attorney General opined that "it is apparent that when a political subdivision undertakes to establish a road or highway, it must also provide for the drainage of that highway. Roadside ditches which handle the road drainage must be deemed to be part of the highway system. Thus, the political

subdivision with the responsibility for the repair and maintenance of a particular road must, as a part of that responsibility, clean and maintain the ditches which run along the side of the road." In this instance, it follows that, as SR 86 is a state road within the state highway system, the state had a duty to maintain the drainage ditch at issue.

{¶26} It is settled that the "existence of a duty depends on the foreseeability of the injury. * * * The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). In discussing foreseeability, the magistrate stated, "The court finds that defendant's knowledge of [an] environmental impact report, combined with information it received regarding the condition of the ditches along SR 86, presented a foreseeable risk that failure to maintain proper water flow in the ditches would result in contamination of the nearby shallow aquifers." (Magistrate's Decision at 16.) And, with respect to causation, the magistrate stated: "Based upon the totality of the evidence, the court finds that defendant negligently failed to maintain the drainage ditch and that defendant's negligence allowed salt to seep into the ground and contaminate the shallow aquifer that supplied plaintiffs' well." (Magistrate's Decision at 19).

{¶27} In this case, Edwards' testimony regarding the ponding water in the ditch supports a determination that there was an insufficient flow of water in the ditch and that ODOT did not adequately maintain the ditch along SR 86 in front of plaintiffs' property. Also, plaintiffs' expert linked the ponding water with contamination of plaintiffs' well-water system. The court concludes that the magistrate did not err by concluding that ODOT was involved in negligent or tortious activity or that ODOT's action caused harm to plaintiffs.

{¶28} ODOT's third and seventh objections are overruled.

**Objection No. 4: "The magistrate erred by not holding that the discretionary-function doctrine immunizes ODOT from liability for both the type of road salt it applied to the road and for the timing of when it performed work on the ditch in front of plaintiffs' property."**

{¶29} In its fourth objection, ODOT maintains that the discretionary-function doctrine should apply and immunize it from liability for the type of road salt it applied and the timing of when it performed work on plaintiffs' ditch. *See generally Risner v. Ohio Dept. of Transp.*, 145 Ohio St.3d 55, 2015-Ohio-4443, 46 N.E.2d 687, ¶ 12 (stating that the phrase "discretionary-function doctrine" is commonly used "as shorthand for the notion that the state is protected from suit for making basic policy decisions characterized by the exercise of a high degree of official judgment or discretion" and adopting the phrase "discretionary-function doctrine" as "shorthand to mean that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision that is characterized by the exercise of a high degree of official judgment or discretion" (footnote omitted)).

{¶30} The court finds that the magistrate did not premise a finding of liability based on the type of road salt that ODOT applied.  It follows the magistrate did not err "by not holding that the discretionary-function doctrine immunizes ODOT from liability" as to the issue of what type of salt should be applied.

{¶31} Moreover, even if the timing of when ODOT performed work on the ditch at issue constitutes a discretionary decision, "ODOT has a duty to properly implement its discretionary decisions."  *Risner* at ¶ 24.  As noted in *Rinser*, "For instance, if ODOT negligently constructs a particular highway improvement or causes damage either to that portion or surrounding portions of the highway, it may be subject to liability for failing to execute its decision in a proper manner."  *Id.*

{¶32} ODOT's fourth objection is overruled.

**Objection No. 5: "The magistrate erred by not holding that the public duty doctrine immunized ODOT from liability regarding its actions along State Route 86."**

{¶33} Generally speaking, the state enjoys immunity from civil liability with respect to the performance or nonperformance of a public duty. *See* R.C. 2743.02(A)(3)(a). As explained in *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 13, the public-duty doctrine originated at English common law and "precludes a private party from sustaining a cause of action against a public officer for breach of a public duty. * * * In other words, a public entity owes a duty only to the general public when performing its functions and is therefore not liable for torts committed against an individual absent a special duty owed to the injured person."

{¶34} The General Assembly has codified the public-duty doctrine in R.C. 2743.02. *See* R.C. 2743.02(A)(3). As used in R.C. Chapter 2743, a public duty "includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following: (a) Permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity." R.C. 2743.01(E)(1).

{¶35} The premise of plaintiffs' claims stems from ODOT's failure to maintain the ditch abutting SR 86 that ran along plaintiffs' property. The court finds that maintenance of the ditch at issue does not fall within the definition of public duty contained in R.C. 2743.01(E)(1)—i.e., it does not concern permitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, law enforcement, or emergency response activity. ODOT's fifth objection is overruled.

{¶36} Additionally, the court overrules plaintiffs' objection to the magistrate's failure to make a finding of a "special relationship," *see* R.C. 2743.02(A)(3)(b) (immunity does not apply when a special relationship can be established between the state and an

injured party), which, according to plaintiffs, was established when ODOT undertook an investigation of plaintiffs' property. (Plaintiffs' Response and Objections filed on April 4, 2016, at 11.) Because the court has determined that the public-duty rule does not immunize ODOT in this instance, the court finds that plaintiffs' objection is moot. *See Black's Law Dictionary* 1161 (10th Ed. 2014) (defining moot as "[h]aving no practical significance; hypothetical or academic").

**Objection No. 6: "The magistrate erred by not applying the balancing test set forth in *McGlashan v. Spade Rockledge Terrace Condo Development Corp.*, 62 Ohio St.2d 55 (1980)."**

{¶37} In *McGlashan v. Spade Rockledge Terrace Condo Development Corp.*, 62 Ohio St.2d 55, 402 N.E.2d 1196 (1980), syllabus, the Ohio Supreme Court held:

> b. *In resolving surface water disputes*, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable. (*Butler v. Peck*, 16 Ohio St. 334, and its progeny, overruled to extent inconsistent herein.)

(Emphasis added.) A surface-water dispute is not per se at issue in this case. Because *McGlashan* is not directly applicable, the court finds that the magistrate did not err by not applying *McGlashan*'s holding. ODOT's sixth objection is overruled.

**Objection No. 8: "The magistrate erred by not considering the testimony of plaintiffs' next door neighbor, Sophie Walters, in the analysis."**

{¶38} In its eighth proposition of law, ODOT essentially contends that the magistrate failed to consider the testimony of Sophie Walters as the magistrate did not expressly reference Walters' testimony in his decision.

{¶39} In *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19, the Ohio Supreme Court stated, "A presumption of regularity attaches to all judicial proceedings." Thus, the court may presume that, in resolving the issue of liability before him, the magistrate—as the trier of fact—acted in accordance with his duty to weigh the evidence before him.

{¶40} Although the magistrate did not expressly reference Walters' testimony in his decision, it does not necessarily follow that the magistrate did not consider it. *See Raber* at ¶ 19, quoting *State v. Sweet*, 72 Ohio St.3d 375, 376, 650 N.E.2d 450 (1995) ("Here, the record is silent regarding the trial court's reasoning for not classifying Raber as a sex offender subject to registration in its judgment of conviction, and therefore '[t]here is no showing of irregularity to contradict the presumption of regularity accorded all judicial proceedings.'"). A presumption of regularity therefore attaches to the magistrate's deliberative process as to considering and weighing the evidence.

{¶41} ODOT's eighth objection is unpersuasive and overruled.

**Objection No. 10: "The magistrate erred because the finding in favor of plaintiffs makes ODOT strictly liable for its decision and manner it applied salt to State Route 86 in front of plaintiffs' property."**

{¶42} The court finds that a review of the magistrate's decision discloses that the magistrate did not hold that ODOT was strictly liable for its decision to apply road salt on SR 86 in front of plaintiffs' property and the manner it applied road salt. Moreover, because the magistrate's decision does not hinge on the manner in which ODOT applied road salt, the decision does not, as ODOT contends, "impose[] an unreasonable strict liability standard against ODOT for harm to plaintiffs from the application of road salt to State Route 86." (ODOT Objections at 19.)

{¶43} ODOT's tenth objection is overruled.

**Objection No. 11: "The magistrate erred by finding that Datillo's laboratory test results of March 2015 showed that salt was found in plaintiffs' basement and on a bathroom valve; the results did not show the presence of salt at these locations."**

**Objection No. 12: "The magistrate erred by relying on Datillo's laboratory test results of March 2015 to find that corrosion in plaintiffs' basement and on a bathroom valve was caused by ODOT."**

{¶44} In its eleventh and twelfth objections, ODOT essentially urges that the testimony of plaintiffs' expert—Anthony A. Dattilo—should be discredited, arguing that the magistrate "conflated or confused sodium to be the same as salt regarding efflorescence found in the basement and corrosion on a bathroom pipe valve." (ODOT Objections at 20.)

{¶45} At trial, in response to a question whether plaintiffs' expert had made an opinion to a reasonable degree of scientific certainty with respect to the groundwater at plaintiffs' property and its relationship to road salt, Dattilo testified: "I believe all the evidence presented that the groundwater at the Edwards' property had been contaminated by road salt to a greater extent because the road salt ponded in water from a ditch that wasn't clean, and so that pond of water contained even more salt and allowed it to leach into the ground and into the Edwards' well." (Tr., 362-363.)

{¶46} Dattilo also testified that he took a sample from plaintiffs' basement wall. According to Dattilo, "There was some efflorescence on the wall and I was taking that to see if it was mainly sodium or mainly calcium. And then in the second floor bathroom I had obtained a sample from around the plumping pipe where there was considerable amount of white solid material crusted up around the valve." (Tr., 326-327.) When asked what the results of the sample taken from the basement wall told him, Dattilo testified, "Efflorescence on the basement wall was closest on the south wall, and I had taken some of that. And it's just telling me that it's predominantly sodium that's on the

basement wall and it's not calcium which you might expect coming from a cement block." Dattilo further testified, "Q. So it was sodium? A. It was sodium. Q. And that's salt? A. Salt." (Tr. at 328.)

{¶47} With regard to the valves in the second floor bathroom, when asked what the sample revealed, Dattilo answered, "That it was predominantly sodium. Q. Again, salt? A. Yes." (Tr., at 329.)

{¶48} The court finds that plaintiffs' expert's testimony is persuasive and has probative value. ODOT's eleventh and twelfth objections are overruled.

**Objection No. 13: "The magistrate erred by relying on Edwards' testimony that dye tests proved that water from the footer drain discharged into the stream in the back of the property."**

{¶49} In its thirteenth objection, ODOT urges that the magistrate erred when he noted, "'Jessica [Edwards] provided credible testimony that the integrity of the pipe in question had been dye tested on two occasions, showing that water from the footer drain does indeed discharge into a stream in back of the property.' (Magistrate's Decision, pp. 18-19.)"

{¶50} As stated in *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus, "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." As the trier of fact in this matter, the magistrate is permitted to determine the weight and credibility that should be given to Jessica Edwards' testimony. The court finds that the magistrate did not err by relying on Edwards' testimony regarding dye tests.

{¶51} ODOT's thirteenth objection is overruled.

**Objection No. 14: "The magistrate erred by concluding that plaintiffs proved by a preponderance of the evidence that road salt contaminated the aquifer."**

{¶52} ODOT's fourteenth objection essentially criticizes the magistrate's determination that plaintiffs' proved by a preponderance of the evidence that road salt contaminated the aquifer that supplied plaintiffs' well-water system. Notably, plaintiffs' expert's opinion supports the determination that road salt contaminated the aquifer. The court finds that the magistrate properly determined that plaintiffs proved by a preponderance of the evidence that road salt contaminated the aquifer at issue.

{¶53} ODOT's fourteenth objection is overruled.

**Objection No. 15: "The magistrate erred by relying on the fact that ODOT did not conduct further investigation to make a definitive determination whether plaintiffs' well water was contaminated by road salt to support a finding of negligence; this reliance is not dispositive of any issue in this case, and ODOT's decision not to expend additional funds for more testing is immune from liability."**

{¶54} In reaching a determination that ODOT negligently failed to maintain the drainage ditch at issue and ODOT's negligence allowed salt to seep into the ground and contaminate the shallow aquifer that supplied plaintiffs' well, the magistrate remarked:

> c. Furthermore, ODOT's own consultant, Lawhon, determined that road salt applied to SR 86 had migrated onto the soil near plaintiffs' well. Nevertheless, ODOT declined Lawhon's recommendation to conduct further investigation to make a definitive determination whether plaintiffs' well water was contaminated by road salt. Denniss' decision to reject Lawhon's recommendation for further investigation was based, at least in part, upon an unfounded suspicion that Tate had sabotaged the well prior to the foreclosure.

(Magistrate's Decision at 19.)

{¶55} ODOT contends, "There is no evidence what additional testing would have revealed. Furthermore, ODOT's decision not to expend additional funds to conduct more tests is barred by the discretionary immunity doctrine." (ODOT Objections at 25.)

**{¶56}** In this instance, the magistrate did not find ODOT was liable solely because ODOT did not expend more funds to conduct more tests. Rather, the magistrate's decision was based on the totality of the evidence. In his decision, the magistrate states, "Based upon the *totality of the evidence*, the court finds that defendant negligently failed to maintain the drainage ditch and that defendant's negligence allowed salt to seep into the ground and contaminate the shallow aquifer that supplied plaintiff's well." (Emphasis added.) (Magistrate's Decision at 19). ODOT's fifteenth objection is overruled.

## III. **Conclusion**

**{¶57}** Wherefore, upon independent review as to the objected matters, the court overrules ODOT's objections and plaintiffs' objections. The court finds that the magistrate has properly determined the factual issues and appropriately applied the law. The court adopts the magistrate's decision and recommendation as its own. Judgment on the issue of liability shall be rendered in favor of plaintiffs.

_____
PATRICK M. MCGRATH
Judge

[Cite as *Edwards v. Ohio Dept. of Transp.*, 2016-Ohio-5221.]

| | |
|---|---|
| JESSICA EDWARDS, et al. | Case No. 2014-00553 |
| Plaintiffs | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

{¶58} For the reasons set forth in the decision filed concurrently herewith, upon independent review as to the objected matters, the court OVERRULES ODOT's objections and plaintiffs' objections.  The court finds that the magistrate has properly determined the factual issues and appropriately applied the law.  The court adopts the magistrate's decision and recommendation as its own.  Judgment on the issue of liability is rendered in favor of plaintiffs.  A case management conference is scheduled for *August 11, 2016, at 9:00 a.m.,* to discuss further proceedings.  The court shall initiate the conference via telephone.

_____
PATRICK M. MCGRATH
Judge

cc:

Robert Casarona
The Falls Building
57 East Washington Street
Cleveland, Ohio 44022

Eric A. Walker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Kelly D. McCloud
Assistant Attorney General
Environmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215

**Filed June 10, 2016**
**Sent to S.C. Reporter 8/3/16**